UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:21-cv-00451

**Gunstream Land Corporation,**
*Plaintiff,*
v.
**Hans V. Hansen et al.,**
*Defendants.*

## OPINION AND ORDER

In this case, a sporting club sues after a dam failed. The failure allegedly allowed flood water, soil, sediment, and debris to wash into the club's main lake and destroy its ecosystem. Plaintiff claims damages for the expense of cleanup, replanting, and restoration of its sport-fishing business.

What caused the dam failure? According to the complaint, one thing after another. Plaintiff claims that defendants acted without hiring a dam engineer, without proper soil compaction, without suitable building methods, without a required wetlands permits, without required environmental studies, and without addressing post-construction problems. Based on those allegations, plaintiff claims that defendants are liable for violation of the federal Clean Water Act, violation of the federal Endangered Species Act, and negligence and trespass under Texas law.

Defendants move for the court to dismiss the two federal causes of action for failure to state a legally viable claim. Defendants then move for the court to dismiss the state-law causes of action for lack of subject-matter jurisdiction, which could arise here only supplementary to a federal question.

**1.** The Clean Water Act allows citizen suits against any person alleged to be "in violation" of an effluent standard or limitation.[1] The present tense used in that provision allows citizen suits

[1] 33 U.S.C. § 1365(a)(1).

only for continuously or intermittently ongoing violations, not wholly past violations.[2]

In contrast, the complaint rests the alleged Clean Water Act violation on only the building of the dam itself, stating: "Defendants violated the Federal Clean Water Act by failing to perform the requisite study to determine whether they needed to apply for and obtain a 404 permit to *construct* their dam."[3] The next two paragraphs simply repeat the complaint's allegation that defendants were required to get a permit "to construct a dam,"[4] and that defendants "never applied for a 404 permit."[5]

The act of constructing a dam without a required permit is not the same act as discharging pollutants into a waterway. Only the latter is covered by the Clean Water Act citizen-suit section upon which plaintiff relies.[6] So the first count of the complaint does not allege an actionable violation, much less an ongoing one. Constructing the dam—the violation alleged in the complaint—was a wholly past act, outside of the Act's citizen-suit provision.

Plaintiff argues that it alleges an "ongoing discharge of pollutants."[7] One paragraph of the complaint alleges that certain materials are, during normal rains, being washed from the former dam

[2] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 175 (2000); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 49 (1987); *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1063 (5th Cir. 1991) ("Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition.").

[3] Compl. (Doc. 1) at 12 ¶ 52 (emphasis added).

[4] *Id.* at 12 ¶ 53.

[5] *Id.* at 12 ¶ 54.

[6] *Id.* at 6 ¶25 (citing the need for a "404 permit," meaning under 33 U.S.C. § 1344, to build a dam on wetlands); Pl.'s Sur-reply (Doc. 11) at 4–5 (citing the same); *see* 33 U.S.C. § 1365(f)(1) (defining "effluent standard or limitation" to include "an unlawful act under subsection (a) of section 1311 of this title"); *id.* § 1311(a) (making unlawful "the discharge of any pollutant" except as in compliance with certain provisions); *id.* § 1344 (allowing an official to issue a permit for "the discharge of dredged or fill material" into covered waters at specified sites).

[7] Pl.'s Sur-reply (Doc. 11) at 3.

site downstream into plaintiff's fishing lake.[8] Normal rains are certainly ongoing intermittent events.

But the complaint mentions those intermittent rains only in alleging the scope of harm—the "damage to the Gunstream Property."[9] The complaint does not allege that those ongoing events are themselves a violation of the Clean Water Act.[10] The court cannot add to the complaint allegations made only in motion briefing. Nor would the court know where to start. For one, the complaint never uses the term "navigable waters," despite that being an element of a citizen suit.[11] Moreover, although the statutory term "pollutant" includes "dredged spoil"[12] (not "dredged soil"[13] as plaintiff's briefing recites), the complaint does not allege with specificity what type of "soil" is washing downstream in normal rains. The court cannot simply assume an answer.[14] Thus, the complaint fails to state a claim upon which relief can be granted under the Clean Water Act's citizen-suit provision.

**2.** The Endangered Species Act makes it unlawful for any person to "take any such species [which is listed as endangered] within the United States or the territorial sea of the United

---

[8] The relevant paragraph of the complaint reads in full:

> Defendants have compounded their acts and omissions by failing to clean up the dam failure on their property. There are significant amounts of sediment and soils that are not stabilized at the site of the dam and within the channel running [on separate property] from the dam to the Gunstream Property. These materials are being washed downstream into Big Lake, especially during even normal rain events, thereby causing further damage to the Gunstream Property.

Compl. (Doc. 1) at 10 ¶ 44.

[9] *Id.*

[10] *See id.* at 12 ¶¶ 51–55 (no such allegation).

[11] *See* 33 U.S.C. § 1365(a)(1) and (f)(1); *id.* § 1362(12); *id.* § 1311(a) (using that term to give meaning to "effluent standard or limitation" as defined in § 1365(f)(1)).

[12] *Id.* § 1362(6).

[13] Pl.'s Resp. (Doc. 9) at 7.

[14] Defendants' motion to dismiss raises a facial challenge to the sufficiency of the complaint, in which the court views the well-pleaded facts in a light favorable to plaintiff but cannot accept "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

States."[15] A prohibited "take" includes "harm" to a covered species,[16] which by regulation "may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."[17]

Prohibited "harm" to a species may "be caused by habitat modification, but habitat modification does not constitute harm unless it 'actually kills or injures wildlife.'"[18] As such, plaintiff needs to show that habitat modification occurring from the alleged pollution actually kills or injures wildlife.

Plaintiff argues that continued pollution washing down from the former dam site during rainfall is an ongoing violation of the Endangered Species Act by threatening the habitat of three species of endangered birds: the Least Tern, the Piping Plover, and the Red Knot.[19] The complaint alleges that the area is a "viable habitat for" those three birds.[20] But the complaint does not allege that any endangered species was harmed, in fact, by defendants' actions. The complaint does not even allege that any of the three bird species ever lived on plaintiff's or defendants' land.

The mere chance that one or more endangered species may have lived on the land, and may have been killed or injured by pollution, is not enough to plead an Endangered Species Act violation. A court is not required to accept a pleading of "the mere possibility of misconduct."[21]

Plaintiff also argues that defendants had a duty under section 10 of the Endangered Species Act to apply for an Incidental Take Permit before dam construction.[22] To be sure, if a party chooses

---

[15] 16 U.S.C. § 1538(a)(1)(B).
[16] *Id.* § 1532(19).
[17] 50 C.F.R. § 17.3.
[18] *City of Austin v. Kinder Morgan Tex. Pipeline, LLC*, 528 F. Supp. 3d 670, 681 (W.D. Tex. 2021) (quoting *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 924–25 (9th Cir. 2000)).
[19] Pl.'s Resp. (Doc. 9) at 4.
[20] Compl. (Doc. 1) at 4 ¶ 27.
[21] *Iqbal*, 556 U.S. at 679.
[22] *See* 16 U.S.C. § 1539.

not to secure a permit, and there is a "take" of an endangered species, the Act authorizes civil and criminal penalties.[23] But failure to obtain a permit is not itself a basis for citizen suit under the Act.[24] So the complaint fails to state a claim upon which relief can be granted under the Act.

**3.** Because plaintiff has not pleaded a viable federal cause of action under either the Clean Water Act or the Endangered Species Act, those counts of the complaint are dismissed. With the only two federal-question claims dismissed, the state-law claims are dismissed for lack of subject-matter jurisdiction.

Defendants' motion to dismiss is therefore granted, and the complaint is dismissed in its entirety. Plaintiff is granted one opportunity to cure pleading deficiencies and has until October 15, 2022, to file an amended complaint, if desired.

*So ordered by the court on September 12, 2022.*

J. CAMPBELL BARKER
United States District Judge

[23] *Defs. of Wildlife*, 204 F.3d at 927.

[24] *See id.* (noting that "a party may proceed without a permit, but it risks civil and criminal penalties if a 'take' occurs").