UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:21-cv-00451

**Gunstream Land Corporation,**
*Plaintiff*,

v.

**Hans V. Hansen et al.,**
*Defendants*.

## OPINION AND ORDER

The jury returned a verdict awarding Gunstream Land Corporation, the plaintiff in this case, compensatory and punitive damages. Now, Hans and Karen Hansen, the defendants, seek a settlement credit for the amount their liability insurer paid to Gunstream to settle a coverage dispute. The Hansens also seek leave to amend their answer to include such credit as an affirmative defense. For the reasons below, defendants' motion to apply the settlement credit (Doc. 107) is granted and defendants' motion to amend their answer (Doc. 115) is denied as moot.

### Background

This lawsuit arises out of damage caused to Gunstream's property when a dam built on the Hansens' property failed on September 22, 2020. At the time of the failure, the Hansens were insured under a general commercial liability policy by The Burlington Insurance Company.

Gunstream originally filed suit against the Hansens on April 20, 2021 ("the first lawsuit").[1] The lawsuit asserted claims for negligence, negligence per se, gross negligence, trespass, violation of the Federal Clean Water Act, and violation of the Federal Endangered Species Act. The Hansens demanded that Burling-

---

[1] Civil Action No. 6:21-cv-00155.

ton provide a defense. Burlington agreed but reserved the right to seek a declaration that it owed no duty to defend or indemnify.

On June 23, 2021, Burlington exercised that right and filed a declaratory judgment action ("the insurance lawsuit"),[2] suing both the Hansens and Gunstream and seeking a declaration that it had no duty to defend or indemnify the Hansens. But before service was completed in the insurance lawsuit, this court dismissed the first lawsuit without prejudice because Gunstream had not yet complied with the 60-day pre-suit notice requirements of the Clean Water Act and Endangered Species Act.[3] The court then administratively closed the insurance suit until a new lawsuit was filed by Gunstream that complied with the notice requirements.

On November 17, 2021, the present lawsuit was filed, and the insurance lawsuit was reopened. Burlington filed an amended complaint in the insurance lawsuit, which Gunstream answered. The Hansens, however, did not answer the amended complaint despite being served personally. On March 9, 2022, default was entered against the Hansens. On May 10, 2022, Burlington filed a motion for summary judgment. Before Gunstream's deadline to respond, Gunstream and Burlington jointly notified the court that a settlement had been reached. On August 12, 2022, Gunstream was dismissed from the suit with prejudice, and the court entered a default judgment against the Hansens, declaring that "The Burlington Insurance Company has no duty to defend or indemnify Hans V. Hansen and Karen M. Hansen" in the present lawsuit.

The present case proceeded with new defense counsel. On October 14, 2022, Gunstream filed an amended complaint. On November 11, 2022, the Hansens answered but did not plead settlement credit as an affirmative defense. A jury verdict, returned

---

[2] Civil Action No. 6:21-cv-00245.
[3] These requirements are located respectively at 33 U.S.C. § 1365(b)(1)(A) and 16 U.S.C. § 1540(g)(2)(A)(i).

after a six-day trial, awarded $745,000 in compensatory damages and $1,500 in punitive damages to Gunstream. The day after the verdict, the court ordered the parties to provide briefing on the appropriate amount of prejudgment interest.

On the day that briefing was due, the Hansens filed a motion to apply a settlement credit based on Gunstream's settlement with Burlington. In essence, the Hansens seek to reduce the damages awarded to Gunstream by the amount of Gunstream's settlement with Burlington in the insurance lawsuit. Gunstream's response argues that the Hansens waived any offset by failing to plead the settlement credit as an affirmative defense in their answer. Two days later, the Hansens moved to amend their answer accordingly.

## Analysis

The court first excuses the Hansens' failure to plead a settlement credit in their answer, finding that Gunstream has failed to establish that it was prejudiced. The court then grants the Hansens' motion to apply a settlement credit for the agreement between Gunstream and Burlington.

**1. Waiver of affirmative defense**

Under Texas Law, "the judge, not the jury, decides whether a defendant is entitled to a settlement credit." *Antero Res., Corp. v. C&R Downhole Drilling Inc.*, 85 F.4th 741, 748 (5th Cir. 2023). Nevertheless, "offset due to a settlement credit is an affirmative defense that must be pleaded and proved by the defendant." *Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C.*, 546 F. App'x 458, 465 (5th Cir. 2013). And failure to include an affirmative defense in a responsive pleading "usually results in a waiver." *Simon v. United States*, 891 F.2d 1154, 1157 (5th Cir. 1990). But a trial court has discretion to excuse waiver of an affirmative defense if the party against whom the defense is to be asserted has not suffered "prejudice or unfair surprise." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013). Rather than taking a "formalistic ap-

proach," a court must look to "the overall context of the litigation" for evidence of prejudice and whether the plaintiff had sufficient time to respond to the newly raised affirmative defense. *Pasco ex rel. Pasco v Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009).

The Fifth Circuit has found that failure to plead offset was validly excused when both parties addressed the issue before trial in a motion in limine and a trial brief. *See Giles v. Gen Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001). There, the plaintiff asserted that his expert was "ambushed" by the defendant's questioning about the offset at trial, but the Fifth Circuit held this prejudice was not "unfair" because offset was addressed in pretrial filings. *See id.* at 494–95.

In contrast, the Fifth Circuit held that a district court abused its discretion in excusing failure to plead offset for a settlement credit when it was not raised until after a verdict and was not affirmatively raised in a motion in limine. *See Garrison*, 546 F. App'x at 465. There, the plaintiff argued that the damages model it used at trial already took into account the settlement and that it could have submitted additional evidence of damages at trial had it known in advance that the defendant was seeking a settlement credit. *Id.* at 464–65.

Here, Gunstream argues that it was prejudiced because "[h]ad the Hansens pled the affirmative defense that they were due offset or settlement credit from the Burlington Lawsuit, Gunstream may have developed further evidence during trial." Doc. 113 at 9. However, Gunstream does not specify what evidence it would have developed or any other way in which its trial presentation would have changed. That distinguishes this case from *Garrison*, where the plaintiff altered its presentation to the jury based on the assumption that the defendant was not seeking an offset.

Moreover, like in *Giles*, the settlement with Burlington was addressed by the parties pre-trial, albeit in a request for production. *See* Doc. 107-1. When the Hansens requested that Gunstream produce the settlement agreement, Gunstream refused

on the grounds that the settlement agreement was confidential. *Id.* at 3–4. Defendants did not file a motion to compel production of the insurance agreement, but production of the confidential insurance agreement prior to trial may have been improper. *See, e.g.*, *Morris v. Aircon Corp.*, 2017 WL 11630439, at *2 (E.D. Tex. Sept. 27, 2017) (denying motion to compel production of settlement agreement for the purpose of "calculation of . . . potential settlement credits" because "such relevancy [was] not yet ripe as there ha[d] been no judgment against [defendant]").

The court does not condone raising the affirmative defense after the jury verdict. But Gunstream was given notice of the Hansens' claim to a settlement credit post-trial and adequate time to respond to it. Moreover, Gunstream has not specifically pointed to any way in which the Hansens' failure to timely raise the affirmative defense impacted Gunstream's pre-trial preparation or trial presentation. *Cf. Pasco*, 566 F.3d at 577–78 (reversing decision to deem affirmative defense waived because trial court did not articulate or describe any prejudice). Accordingly, the Hansens' failure to timely plead offset due to settlement credit is excused. Finally, because the failure to plead the affirmative defense is excused, the Hansens' motion to amend their answer (Doc. 115) is denied as moot.

**2. Motion to apply settlement credit**

The Hansens contend that they are entitled to a settlement credit for the amount Gunstream received from Burlington, the Hansens' liability insurer. The court agrees.

**1.** Whether a settlement credit applies here is governed by the one-satisfaction rule. Under that rule, "a plaintiff is entitled to only one recovery for any damages suffered." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W. 3d 101, 106 (Tex. 2018). The "fundamental consideration" in applying the rule is "whether the plaintiff has suffered a single, indivisible injury—not the causes of action the plaintiff asserts." *Id.* at 107.

> Entitlement to a settlement credit is evaluated under a burden-shifting framework:
>
>> First, a nonsettling defendant seeking a settlement credit "has the burden to prove its right to such a credit." *Sky View*, 555 S.W.3d at 107. The defendant discharges this burden "by introducing into the record either the settlement agreement or some other evidence of the settlement amount." *Id.* Once the nonsettling defendant demonstrates a right to a settlement credit, "the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation." *Id.* (quoting *Utts* [*v. Short*], 81 S.W.3d [822,] 828 [(Tex. 2002)]). "The plaintiff can rebut the presumption that the nonsettling defendant is entitled to settlement credits by presenting evidence showing that the settlement proceeds are allocated among defendants, injuries, or damages such that entering judgment on the jury's award would not provide for the plaintiff's double recovery." *Id.* at 107–08. . . . [I]f a plaintiff fails to carry its burden to allocate, then the defendant is entitled to a credit equal to "the entire settlement amount." *Id.*
>
> *Bay, Ltd. v. Mulvey*, 686 S.W.3d 401, 406 (Tex. 2024). In sum, "a nonsettling defendant is presumptively entitled to a credit for the entire amount of a settlement unless the plaintiff proves that part or all of the settlement amount is attributable or allocated to an injury other than the one for which it seeks recovery from the nonsettling defendant." *Id.*

The Hansens have met their initial burden by introducing the settlement agreement and its amount into the record. Thus, the burden shifts to Gunstream to show that the compensation it received from the Hansens' insurer was for an injury other than Gunstream's negligence claims. *See Sky View*, 555 S.W.3d at 110 ("The proper question is whether the plaintiff has suffered a single, indivisible injury.").

Gunstream has not met its burden. The only injury Gunstream has identified is the harm it suffered when the Hansens' dam failed, the injury for which the jury awarded damages. And that is the precise damage for which compensation was sought from Burlington in the insurance lawsuit. In that suit, Gunstream took the position that the policy covered the harm it suffered and that Burlington would ultimately be liable to pay for that harm. Consideration was then paid to settle Gunstream's claim that Burlington had to pay for this harm. *See* Doc. 113 (Gunstream's Response) at 6 (noting that Gunstream was paid consideration to establish that "there is no coverage . . . for the man-made dam failure incident on September 22, 2020[,] or the damages resulting therefrom").

To further illustrate that Gunstream was compensated for the same injury for which the jury awarded damages, suppose that the insurance lawsuit continued to a judgment on the merits in favor of Gunstream. The court would have determined that Burlington had a duty to indemnify the Hansens for the damages owed to Gunstream.[4] That would mean that, after the jury returned its verdict in the present case, Gunstream could sue Burlington directly to recover the damages assessed by the jury. *See, e.g.*, *In re Ill. Nat'l Ins. Co.*, 685 S.W.3d 826, 840 (Tex. 2024) (holding that once an insured becomes obligated to pay, the third-party claimant may sue the liability insurer directly to collect its damages). Indeed, the insurance agreement itself provides that "[a] person or organization may sue us to recover . . . a final judgment against an insured." Doc. 21-1, *Burlington Ins. Co. v. Hansen*, No. 6:21-cv-00245, at 48. Thus, Burlington paid Gunstream to relieve itself of the potential future obligation to pay the

---

[4] See Doc. 11 (Amended Complaint), No. 6:21-cv-00245 at ¶ 28 (praying for a declaration that the insurer had no duty to indemnify defendants for the harm alleged in the present lawsuit).

damages awarded in the present case. The Hansens are therefore entitled to a settlement credit.

This result is consistent with the Restatement (Second) of Torts, which states: "A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability." Restatement (Second) of Torts § 920A(1) (Am. L. Inst. 1979). In a comment, the Restatement makes clear that payments "by or for a defendant" include "payments made under an insurance policy that is maintained by the defendant, *whether made under a liability provision or without regard to liability*." *Id.* § 920A cmt. a (emphasis added).

The Texas Supreme Court has followed this rule when a settlement was reached with a title insurer whose policy was procured by the defendant for the benefit of the plaintiff. *See Sky View*, 555 S.W.3d at 115. It has also followed this rule when money was paid by a fire insurer whose policy was procured by the defendant-lessee for the benefit of the plaintiff-lessor. *See Publix Theatres Corp. v. Powell*, 71 S.W.2d 237, 241–42 (Tex. 1934).

To be sure, in each of those cases, the party against whom the credit was applied was a named beneficiary under the policy. *See Sky View*, 555 S.W.3d at 114 (noting that the plaintiff was "the named insured under [the] title policy"); *Publix*, 71 S.W.2d at 238 (noting that the property insurance was "payable to" the plaintiff). And here, Gunstream obviously was not a *named* beneficiary of the Hansens' liability insurance. But Gunstream was a third-party beneficiary nonetheless. *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 309 (5th Cir. 2021) ("A party aggrieved in contract or tort 'by the insured is a third party beneficiary of a liability insurance policy.'" (quoting *State Farm Cnty. Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989))).

Applying a settlement credit here is consistent with the burden-shifting framework and the Restatement, and it is a logical extension of situations in which the Texas Supreme Court has applied a settlement credit. So the court concludes that the Texas Supreme Court would do the same. *See Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019) (noting that courts sitting in diversity are "bound to resolve the issue as the state's highest court would").

**2.** Gunstream makes four arguments as to why the one-satisfaction rule should not apply here, but none are persuasive. First, Gunstream asserts that it "never sued Burlington or alleged Burlington was liable to Gunstream in any capacity, especially with respect to the failure of the Hansens' dam." Doc. 113 at 4. But this places too much weight on the procedural position of the parties. The United States Supreme Court has "long considered 'the operation of the Declaratory Judgment Act' to be only 'procedural,' leaving 'substantive rights unchanged.'" *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) (citations omitted) (first quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); and then quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). Gunstream's procedural position as the defendant in the insurance lawsuit does not affect the Hansens' substantive right to a settlement credit. *See Antero Res., Corp. v. C&R Downhole Drilling Inc.*, 85 F.4th 741, 748 (5th Cir. 2023) (characterizing entitlement to a settlement credit as "substantive").

In line with this conclusion, the Second Court of Appeals has applied a credit for a settlement reached in a separate declaratory judgment suit. In *Dalworth Restoration, Inc. v. Rife-Marshall*, 433 S.W.3d 773 (Tex.App.—Fort Worth 2014, pet. dism'd w.o.j.), a homeowner's insurer had previously sued her in federal court for a declaratory judgment that it was not liable to pay for hail damage. Through mediation, the federal

case was settled for $600,000. *Id.* at 778. The Court of Appeals held that the state trial court abused its discretion[5] in declining to apply a credit of $600,000 to the homeowner's state-court suit against a mold remediation company (not a party to the federal suit) that worked on her home. *Id.* This was so even though the settlement was in a separate suit in which the party receiving settlement funds was the defendant. *Id.*

Second, Gunstream argues that "[n]othing from the [insurance] lawsuit establishes [that] Burlington committed any act, or was otherwise obligated, to Gunstream for the same single, indivisible injury Gunstream sought to recover from the Hansens." Doc. 113 at 5. But Gunstream's position in the insurance lawsuit was that Burlington was obligated to pay for damages arising out of the dam failure. The fact that Burlington's obligation was not definitively established in the lawsuit is the very nature of a settlement. *See First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 79 (Tex. 1993) (applying a settlement credit even though the settling parties "denied any liability").

Third, Gunstream alleges that Burlington settled with Gunstream because Gunstream "was all that stood between Burlington and the declaratory judgment it sought against absent defendants." Doc. 113 at 5. "A settlement with Gunstream," Gunstream argues, "clear[ed] the path for Burlington to obtain its declaratory judgment and to cease defending the Hansens in Gunstream's lawsuit." *Id.*

To start, Gunstream's position is not entirely accurate because the court did not need to dispose of the claim between Gunstream and Burlington before entering a default judgment against the Hansens. *See* Fed. R. Civ. P. 55 advisory

---

[5] The Texas Supreme Court has since clarified that the appropriate standard of review of settlement credits is de novo. *Sky View*, 555 S.W.3d at 108.

committee's note to 2015 amendment (contemplating a default judgment "that does not dispose of all of the claims"). And if Burlington felt it necessary to obtain a final judgment against the Hansens before it stopped defending, it could have moved for a partial final judgment under Rule 54(b). *See, e.g.*, *M C Bank & Tr. Co. v. Suard Barge Serv., Inc.*, 2017 WL 3991076, at *6 (E.D. La. Sept. 11, 2017) (entering partial final judgment against defaulting defendant while claims against appearing defendant were pending). In any event, the focus in determining entitlement to a settlement credit is on the *settlement-receiver*'s injury being compensated, not on the *settlement-payer*'s motivation in settling.

Fourth, Gunstream references provisions in the settlement agreement stating that "nothing in this Agreement shall be construed as a release of any of Gunstream's claims asserted in the Underlying Lawsuit" and "[n]othing in this release precludes or otherwise affects Gunstream's ability to pursue the claims it has asserted against the Hansens in the Underlying Lawsuit. . . ." Doc. 118 at §§ 1.2, 2.1.[6] But a "settlement credit" is not a "release." *Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 6 n.4 (Tex.App.—Waco 2007, pet. denied). The Hansens were not parties to this settlement agreement and therefore cannot be impeded by the provisions cited by Gunstream. *See Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002) ("[A] nonsettling party should not be penalized for events over which it has no control."). Furthermore, these provisions do nothing to allocate the settlement funds among injuries other than the dam failure, which is the pertinent inquiry for which Gunstream bears the burden. Gunstream makes no attempt to argue that they do.

---

[6] Because Gunstream has quoted these portions of the agreement in its public filing, the court need not unseal the confidential settlement agreement.

## Conclusion

For the reasons given above, the Hansens' motion for a settlement credit (Doc. 107) is granted, and the Hansens' motion to amend their answer (Doc. 115) is denied as moot. The court will issue a final judgment forthwith reflecting the calculations below.

| Date | Principal | Interest Rate | Accrued Interest |
|---|---|---|---|
| 4/3/2021[7] | $745,000.00 | 8.50%[8] | |
| 6/21/2022[9] | $745,000.00 | 8.50% | $77,029.56 |
| **LESS: Settlement credit of $100,000.00** | | | |
| 6/21/2022 | $722,029.56 | 8.50% | |
| 6/4/2024[10] | $722,029.56 | 8.50% | $120,051.96 |
| **TOTAL: $842,081.52 in compensatory damages** | | | |

---

[7] Pre-judgment interest on state-law claims is governed by state law. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010). Under Texas law, pre-judgment interest in property-damage cases begins to accrue on the earlier of (i) "the 180th day after the date the defendant receives written notice of a claim" or (ii) "the date the suit is filed." Tex. Fin. Code § 304.104. The parties have noted their agreement that pre-judgment interest began to accrue on April 3, 2021, 180 days after the Hansens received notice.

[8] Texas law provides that a "property damage case earns prejudgment interest." Tex. Fin. Code. § 304.102. Subject to exceptions not present here, the pre-judgment interest rate is the prime rate as published by the Board of Governors for the Federal Reserve System. *See id.* § 304.103 (pre-judgment interest rate is equivalent to post-judgment interest rate); *id.* § 304.003(c) (post-judgment interest rate is the prime rate). That rate is 8.50% per annum. *See* Selected Interest Rates (Daily) – H.15, Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/releases/h15.

[9] Settlement credits apply "first to the accrued interest and then to the principal, with each credit establishing a new interval." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 816 (Tex. 2006). From that point forward, "interest continues to accrue only on the remaining principal." *Id.*

[10] Pre-judgment interest ends "on the day preceding the date judgment is rendered." Tex. Fin. Code. § 304.104.

| Date | Principal | Interest Rate | Accrued Interest |
|---|---|---|---|
| **4/3/2021** | $1,500.00 | 8.50% | |
| **6/4/2024** | $1,500.00 | 8.50% | $405.30 |
| **TOTAL: $1,905.30 in punitive damages** | | | |

*So ordered by the court on June 5, 2024.*

                        J. Campbell Barker
                      United States District Judge